Beatrice Edmonds Brenneman v. Commissioner.
Brenneman v. Commissioner
Docket No. 30308.
United States Tax Court
1952 Tax Ct. Memo LEXIS 168; 11 T.C.M. (CCH) 628; T.C.M. (RIA) 52190; June 20, 1952
Raymond M. Wansley, Esq., 1216 Bank of America Bldg., San Diego, Calif., for the petitioner. Charles H. Chase, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: A portion of a deficiency in the amount of $1,980.76 in petitioner's income tax for 1945 is in controversy. The sole question is whether a gain of $11,273.59 on the sale by petitioner in 1945 of eight real estate lots to one person is capital gain or ordinary income. Some of the facts were stipulated and are hereby found accordingly. Findings of Fact Petitioner is an individual and lives at 3637 Curtis Street, San Diego, California. On or before March 15, 1946, petitioner filed with the collector of internal revenue for the sixth district of California an income tax return for the calendar year 1945, reporting *169 a net income of $1,066.48, and petitioner at such time paid to the collector the income tax of $130.29 as computed on the return. By notice of deficiency mailed to petitioner on June 12, 1950, which notice is the subject of this appeal, respondent determined petitioner's net income for the calendar year 1945 to be $11,383.91 and determined an income tax deficiency in the amount of $1,980.76. In determining said net income of $11,383.91 and said deficiency of $1,980.76, respondent included in petitioner's adjusted gross income 100 per cent of the gain, in the amount of $11,273.59, realized by petitioner on the sale during the calendar year 1945 of eight real estate lots to one person. Said real property was held by petitioner for more than six months and the gain realized by petitioner upon the sale of the property during the calendar year 1945 was $11,273.59. On or about October 24, 1944, petitioner and her mother acquired property, a portion of which was sold in 1945, consisting of a large residence and the surrounding grounds, comprising approximately thirteen acres, of which approximately five acres were subdivided at the time of purchase, at a total cost of $50,000. *170 At the time of purchase and until August 1945 the residence and immediate grounds, including the land sold by petitioner in 1945, was leased to the University of California for research in connection with the war effort, at a rental of $500 per month. When petitioner acquired the property she intended to remodel the residence thereon, consisting of 11,000 or 12,000 square feet, into a first-class hotel or apartment house, and to build cottage rooms on the rest of the thirteen acres acquired, to be used in conjunction with the central building. This proved impossible, because the property was zoned for single residence purposes and permission to change its use could not be secured. After this plan proved unsuccessful, petitioner sought to sell the property as a whole as a fine residence and advertised it in eastern newspapers and magazines. The efforts to sell the property as a whole were unsuccessful, and because of heavy carrying charges petitioner decided to sell the property in whatever form, as quickly as possible. She discovered that in order for the municipal authorities to permit her to sell any subdivided property in lots, it would be necessary to file a formal subdivision *171 map. She did this and spent approximately $5,000 in extending existing sewer and water lines to all of the subdivided lots. No new streets were opened and all existing streets were fully improved, and the lots of the "paper" subdivision abutted thereon. During the year 1945 petitioner made one sale of eight adjoining lots to one purchaser. The purchaser was a real estate broker and builder, who improved the lots and sold them to individual purchasers. Petitioner is a housewife. Until two years ago and for nineteen years prior thereto she engaged in the profession of interpretative play reviewer. As such, she talked to women's clubs and mixed audiences all over the United States and received compensation therefor. During the year 1945 she devoted all of her time to this profession, received a gross income of more than $1,500 therefrom, and had a net income therefrom of $679.73, which net income she reported upon her income tax return for the calendar year 1945. She had prepared for this profession during her attendance at Stanford University, during six years of Little Theatre work, and five years of coaching theatrical productions. She was qualified in her profession. Petitioner *172 has never been licensed as a real estate broker or real estate salesman; has never been employed by a real estate broker; had never before 1944 owned any real property, except a home; had never before 1945 sold any property, except in 1943 when she sold her residence, and has never at any time sold any real property for persons other than herself. The property sold by petitioner in the year 1945 was not held by her primarily for sale to customers in the ordinary course of a trade or business. Opinion It seems evident that no business was being carried on by petitioner; that the lots were not sold in the ordinary course of that business; and that they were not held for sale to customers for that purpose. Neither by force of frequency, continuity nor volume would this isolated sale be considered as the carrying on of a trade or business. It was, as the evidence makes clear, merely a method of liquidation and in no sense the operation of a business enterprise so that capital gains treatment under section 117 appears to us to be required. See George H. Peck, 19 B.T.A. 345. Decision will be entered under Rule 50.